Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 5096 | DATE | 9/20/2001 |
| CASE TITLE | Thomas Levitan, individually and on behalf of all similarly situated, vs. John B. McCoy, Jr., Richard J. Lehmann, Michael J. McMennamin and Bank One Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum and Opinion Order, defendant's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6) is DENIED. [Doc. # 9]

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 21 2001 | |
| ✓ | Notified counsel by telephone. | | date docketed | 37 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 01 SEP 20 PM 6:24 | date mailed notice | |
| lc(vg) | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

Thomas Levitan, individually and on behalf )
of all others similarly situtated, )
)
                                    Plaintiff, )
      v. )
)
John B. McCoy, Jr., Richard J. Lehmann, )
Michael J. McMennamin and Bank One )
Corp., )
)
                                  Defendants. )

No.   00 C 5096

HONORABLE DAVID H. COAR

DOCKETED
SEP 21 2001

## MEMORANDUM OPINION AND ORDER

Before this court is a Joint Motion to Dismiss brought by defendants Bank One Corporation ("Bank One"), John B. McCoy, Jr., Richard J. Lehmann, and Michael J. McMennanmin (collectively "defendants"). In this consolidated motion, defendants seek the dismissal of plaintiff Thomas Levitan's ("Levitan" or "plaintiff") class action complaint alleging violations of the Federal Truth in Lending Act ("TILA") and Sections 11, 12, and 15 of the Securities Act, 15 U.S.C. § 77k. Defendants seek to dismiss the complaint on the basis that: (1) plaintiff fails to state a claim under Fed.R.Civ. P. 9(b), (2) plaintiff fails to state a claim under Fed. R.Civ.P. 12(b)(6), (3) plainitff's claims under Section 15(a) of the Securities Act fail to allege a predicate violation, and (4) plaintiff's claims are time-barred by the applicable statute of limitations. For the following reasons, the defendants' motion to dismiss is denied.

1

37

## BACKGROUND

This dispute arises from a June 12, 1998, merger between First Commerce Corporation ("First Commerce") and Banc One Corporation ("Old Banc One"). This litigation concerns alleged misrepresentations related to Old Banc One's credit card division, First USA Bank.

In preparation for the merger, Old Banc One and First Commerce filed a joint Registration Statement pursuant to Section 6 of the Securities Act, 15 U.S.C. § 77f. The Registration Statement included financial statements, which reflected "enormous growth" in First USA's credit card business for the most recent fiscal year (1997) and the first and second quarters of 1998.

The defendants also issued a Merger Proxy/Prospectus in order to solicit votes in favor of the merger on July 31, 1998. The prospectus incorporated by reference the Form 10-K for the year ending on December 31, 1997, and the Form 10-Q for the first quarter ending on March 31, 1998. In the prospectus, defendants noted that "such financial statements, in the opinion of Banc One management, contain the adjustments, all of which are normal and recurring in nature, necessary to present fairly Banc One's consolidated financial position, results of operations, and change in cash flows."

The plaintiff first alleges that the Registration Statement, when it became effective on June 12, 1998, concealed the material fact that First USA had been systematically overcharging customers in a variety of ways in violation of TILA. Second, the plaintiff alleges that defendants issued financial statements that did not comply with generally accepted accounting principles. ("GAAP"). The complaint alleges that such violations took place "prior to and at the time of the merger." Complaint ¶ 54.

As a result of these alleged misstatements, the plaintiff states that he and others similarly

2

situated approved the merger and acquired Bank One shares at a price that was artificially inflated, resulting in an Exchange Ratio that was artificially deflated. On August 24, 1999, defendants began a series of disclosures, which the plaintiff alleges revealed the truth about First USA. Bank One issued a press release announcing preliminary earnings for the third quarter and full year of 1999. In the release, Bank One reported that based on "revised outlooks" it anticipated earnings to be down 7-8% from the current market estimates. Bank One stated that the revised earnings outlook was solely the result of changes in growth for First USA.

The plaintiff further alleges that during a conference call on August 25, 1999, certain defendants explained that Bank One would cease First USA's parctice of "accelerating" credit card late fees and would provide credit card customers "interest rate concessions" related to First USA's past activities. These measures were allegedly expected to negatively impact earnings by at least $500 million. Plaintiff alleges that the market found the news material. On August 25, 1999, the price of Bank One common stock fell 22.3% per share from the previous day's closing price. The volume of trading was more than 15 times the daily average trading volume for the previous 52 week period.

On November 1, 1999, Kiplinger's Personal Finance Magazine reported that government regulators were investigating thousands of complaints by First USA credit card holders. The plaintiff alleges the complaints concerned practices that existed before the merger. The article reported that the allegedly illegal practices had existed since 1997.

On November 10, 1999, Bank One announced that earnings would be as much as 15% lower than the revised expectations. The plaintiff alleges that the shortfall was attributed to the performance of First USA. As a result, the price of Bank One stock dropped 11.5% from its

previous day's close.

On December 31, 1999, John B. McCoy, Bank One's Chairman and Chief Executive Officer, resigned. The plaintiff alleges that he resigned as a result of the disclosures of improprieties at First USA.

On January 11, 2000, Bank One announced that earnings for 1999 would be as much a 18% less than analysts had expected and the profits for 2000 would drop sharply. The plaintiff alleges that the earnings drop was attributable to credit card practices. Bank One also announced that it would take a $725 million charge in the fourth quarter of 1999, largely to restructure the credit card division.

The plaintiff's complaint seeks the certification of a class:

> consisting of all persons who exchanged shares of First Commerce common stock for shares of Bank One common stock in connection the Merger and pursuant to the Registration Statement and Merger Proxy Prospectus.

Pursuant to the Merger, the plaintiff and other First Commerce stockholders received 1.408 shares of Old Banc One common stock in exchange for each share of First Commerce common stock (the Exchange Ratio).

In Count I, the plaintiff alleges an action against Bank One for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all First Commerce shareholders who exchanged their First Commerce common stock for Banc One common stock issued in connection with the Merger, and pursuant to the Registration Statement and Merger Proxy/Prospectus. The plaintiff alleges that defendants overstated earnings in the credit card division and failed to disclose material information with regard to the purported growth of Old Banc One's and First USA's credit card operations and the basis on which such growth was achieved.

4

In Count II, the plaintiff alleges an action against the individual defendants for violations of Section 11 of the Securities Act on behalf of First Commerce shareholders who exchanged their First Commerce common stock for Old Banc One common stock issues in connection with the Merger and pursuant to the Registration Statement and Merger Proxy/Prospectus. The plaintiff alleges that the individual defendants overstated the earnings of the credit card division and failed to disclose material information related to the growth of the First USA credit card operation.

In Count III, the plaintiff alleges an action against Bank One for violations of Section 12(a)(2) of the Securities Act. 15 U.S.C. § 77l(a)(2). The plaintiff makes an allegation on behalf who exchanged their First Commerce common stock for Old Banc One common stock issues in connection with the Merger and pursuant to the Registration Statement and Merger Proxy/Prospectus. The plaintiff alleges that the Registration Statement and Merger Proxy/Prospectus contained materially false and misleading statements. The plaintiff alleges that Bank One breached its duty to make a reasonable and diligent investigation.

In Count IV, the plaintiff alleges an action against the individual defendants pursuant to Section 15 of the Securities Act on behalf of all First Commerce shareholders who acquired Old Banc One stock in connection with the Merger. The plaintiff alleges that the individual defendants failed to make a reasonable investigation of either the Registration Statement or the Merger Proxy/Prospectus. Therefore, the plaintiff alleges that each of the individual defendants are jointly and severally liable with Bank One.

**Standard of Review**

Before embarking upon an analysis of the motion to dismiss, this court must determine whether the plaintiff's complaint should be scrutinized under the heightened pleading standards

5

required by Fed.R.Civ.P. 9(b). If a plaintiff makes allegations in a complaint that amounts to fraud, he or she must meet the Rule 9(b) heightened pleading requirement. Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1223 (1st Cir. 1996). If, however, a complaint does not "sound in fraud," a plaintiff should not be required to plead particular facts to support §§ 11 and 12. In re nations Mart Corp. Securities Litigation, 130 F.3d 309, 315 (8th Cir.), cert. denied, 524 U.S. 927 (1998). The plaintiff's complaint in this case does not "sound in fraud" and is exempt from the heightened pleading requirements of Rule 9(b); but the complaint, does in fact meet the Rule 9(b) heightened pleading requirements if required.

The defendants argue that the plaintiff's complaint "sounds in fraud" due to references to underlying alleged TILA violations as well as allegations that characterize First USA's conduct as allegedly "predatory", "illegal," and "unlawful". This court disagrees. In Evergreen Fund, Ltd v. McCoy, No. 00 C 0767, a case in which different plaintiffs brought similar allegations against the same defendants, Judge Andersen determined that the plaintiffs' complaint did not "sound in fraud" and therefore was not required meet the Rule 9(b) heightened pleading standards. Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1223 (1st Cir. 1996). Judge Andersen reasoned, however, that the plaintiffs' complaint, in any case, did meet the heightened pleading standard.[1]

In this case, too, we find the plaintiff's complaint does not "sound in fraud" and therefore is exempt for the heightened pleading requirements under Rule 9(b). As in the Evergreen Fund,

---

[1] While this court recognizes that district judges in this circuit must not treat decisions by other district judges, in this and a fortiori in other circuits, as controlling, Colby v. J.C. Penn Co., Inc., 811 F.2d 1119, 1124 (7th Cir. 1987), we may consider the "intrinsic persuasiveness" of Judge Andersen's analysis. Id. Given the similarity of the allegations in Evergreen Fund and those in the present case, we find Judge Andersen's thorough discussion on the matter particularly persuasive.

6

the alleged TILA violations here "merely form the background for the plaintiff's allegations." Id. at pg. 10. The plaintiff primarily alleges that the individual defendants failed to make "a reasonable investigation or possessed reasonable grounds for the belief that the statements described herein, which were contained in the Registration Statement and Merger Proxy/Prospectus, were true, were without omission of any material facts, and/or were not misleading." Complaint, ¶ 119. The plaintiff does not allege nor even suggest that the defendants intended to deceive First Commerce stockholders or acted with scienter in drafting the Registration Statement. Further, the complaint's use of words such as "predatory," "illegal," and "unlawful" in describing First USA's transactions with its credit card customers does not add up to allegations of security fraud. Therefore, the complaint in this case does not "sound in fraud."

Finally, as in the Evergreen Fund lawsuit, this court finds that the plaintiff's complaint has met even a heightened pleading standard. To meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. Sears v. Likens, 912 F.2d 889, 892 (7th Cir. 1990). In this case, the plaintiff has presented specific statements in the Registration Statement, Merger Proxy/Prospectus, Old Banc One's 10-K, and the first and second quarter Forms 8-K. And, the plaintiffs allege that the defendants have signed the Registration Statement and the Merger Proxy/Prospectus. Therefore, the plaintiff has met the heightened pleading standard imposed by Rule 9(b).

## Discussion

A.   Plaintiff's Reliance on Post Hoc Allegations and "Falsity By Hindsight"

As in Evergreen Fund, the defendants here argue that the plaintiff has failed to properly

allege that the First USA violated TILA because the complaint relies on post hoc statements and "falsity by hindsight" reasoning. In deciding a motion to dismiss, the court must assume all facts in the complaint to be true, construe the allegations liberally, and view the allegations in a light most favorable to the plaintiff. Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 648 (7th Cir. 1997). The court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

In this case, the defendants contend that the plaintiff does not provide any factual basis to establish a reasonable inference that First USA was violating TILA in 1997 and the first quarter of 1998. The plaintiff specifically alleges that First USA systematically violated the TILA from mid-1997 to the effective date of the merger. In addition, the plaintiff alleges that an article in Kiplinger's Personal Finance Magazine traces the alleged violations back to 1997. Plaintiffs also alleged that complaints about First USA dramatically increased.

The defendant further contends that the plaintiff's vagueness with respect to the alleged "GAAP fraud" warrants dismissal. This court has previously held that plaintiffs are not required to state the precise dollar amount when alleging that portions of financial statements were overstated. In re First Merchants Acceptance Corporation Securities Litigation, 1998 WL 781118, *4 (N.D. Ill. 1998) (Coar, J.). The complaint specifically alleges that both the earnings overstatements and resulting stock price inflation were material. The complaint identifies more than a half billion dollars of charges against earning that Old Banc One recorded as a consequence of the previously undisclosed illegal practices at First USA.

This court must assume that all allegations in the complaint are true. Whether plaintiffs

have sufficient evidence to support their allegation, that First USA engaged in a plan to artificially boost its revenues in violation of TILA, is a matter that must be considered under a motion for summary judgment, not a motion to dismiss. Taken in a light most favorable to the plaintiff, the complaint sufficiently alleges underlying TILA violations.

B. Statute of Limitations

Defendants argue that the plaintiff's claims are time-barred under Section 77 of the Securities Act. This court disagrees.

An action claiming a securities violation must be filed "within one year after the discovery of the facts constituting the violation and within three years after such violation." Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321. The Seventh Circuit has held that "discovery" may be imputed to a plaintiff when he is put on "inquiry notice"--i.e., when he becomes "aware of facts that would have led a reasonable person to investigate whether he might have a claim". Tregenza v. Great American Communications Co., 12 F.3d 717, 718, 722 (7th Cir.1993), certiorari denied, 511 U.S. 1085, 114 S.Ct. 1837, 128 L.Ed.2d 465. Whether a plaintiff had sufficient facts to place him on inquiry notice of a claim for securities fraud under S.E.C. Rule 10b-5 is a question of fact, and as such is often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6). Marks v. CDW Computer Centers, Inc., 122 F.3d 363, 367; Tomera v. Galt, 511 F.2d 504, 510-511 (7th Cir.1975), overruled on other grounds by Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385 (7th Cir.1990).

The defendants assert that the filing of other lawsuits against Bank One in April 1999 as well as Senator Phil Gramm's request for an investigation into First USA's practices in May 1999 should have put plaintiff on inquiry notice. The plaintiff argues that he was not put on actual or

inquiry notice until August 25, 1999, when Bank One announced that its First USA subsidiary would, inter alia, cease engaging it its previously-undisclosed practice of "accelerating" credit card late fees and that the imposition of these measures, combined with customer attrition, was expected to negatively impact Bank One's earnings by at least $500 million.

This court with agrees with the plaintiff's view that he could not have reasonably known before August 25, 1999 that he, personally, had a claim against Bank One. While some courts have found litigation has provided inquiry notice that a plaintiff has a claim arising out of similar factual allegations, the facts in this case are distinguishable. Cashman v. Coopers & Lybrand, 877 F.Supp. 425, 436-437, n. 14 (N.D. Ill 1995); Antell v. Arthur Anderson, 1998 WL 245878, *4 (N.D. Ill 1998). The defendants rely heavily on the holding in Cashman, where the court dismissed a shareholder suit as time-barred because another shareholder had brought a similar action more than a year earlier. Id.at *4. In this case, the lawsuits brought in April 1999 were not lawsuits brought by other shareholders but rather they were consumer lawsuits brought against First USA. In addition, the lawsuits brought in April 1999 did not allege securities violations and did not contain references to statements in the Registration Statement or other Old Banc One financial statements. Therefore, unlike Cashman, the plaintiff in this suit was never privy information about the specific allegations against Bank One were or whether or not they had any credibility, as was the shareholder in Cashman. Consequently, it would be unreasonable to believe that Levitan could have discerned, simply from the press reports of these consumer suits, that he had a viable claim against Bank One. A reasonable investor learning that consumer class actions were filed against First USA claiming that it had payment processing problems would not , from that information, have concluded that either First USA's or Bank One's financial statements were or

even may have been materially overstated or prepared in violation of GAAP, particularly when Bank One continued to deny any wrongdoing.

Similarly, the fact that Senator Gramm issued a statement directing the OCC to investigate whether or not First USA had violated TILA is not sufficient to impose inquiry notice on Levitan. In Fujisawa Pharmaceutical Company, Ltd v. Kapoor, 115 F.3d 1332, 1335 (7th Cir. 1997), a securities fraud case, the Seventh Circuit did find that an FDA investigation was one of the many things that put the plaintiff on inquiry notice. The facts in this case, however, are different. The Court found that the plaintiff in Fujisawa had "better access to the relevant documents than the FDA" and "should have begun suspecting fraud many years earlier." Id. at 1335-1336. Recognizing the plaintiff's unusual situation, the Seventh Circuit stated that absent Fujisawa's easy access to the relevant information, the stated statute of limitations would not have begun to run until the FDA investigation brought light to the fraudulent applications submitted to the FDA by the defendant. Id. at 1335. In this case, the plaintiff only had notice that an investigation would begin. The plaintiff did not have access to relevant financial documents and therefore could not obtain the requisite knowledge to trigger inquiry notice.

Consequently, the plaintiff's complaint is not time-barred by the relevant statute of limitations.

C. Section 15 Claims

The plaintiff asserts claims under Section 15(a) of the Securities Act, 15 U.S.C. § 77o(a). The plaintiff asserts liability against the individual defendants as "controlling persons" who are jointly and severally liable for violations by person under their control. Defendants argue that plaintiffs have failed to state a predicate violation. As this court has rejected the defendants'

11

"failure to state" arguments, the plaintiffs have stated a predicate violation. Therefore defendants' motion to dismiss is denied.

## Conclusion

For the foregoing reasons, defendant's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6) is DENIED.

Enter:

_David H. Coar_

David H. Coar

**United States District Judge**

Dated: SEP 20 2001